## COYNE *v.* UNION PACIFIC RAILWAY CO.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF COLORADO.

No. 8. Argued and submitted January 23, 24, 1890. — Decided March 3, 1890.

In this case, which was an action against a railroad company, by one of its employés, to recover damages for a personal injury, it was *Held*, that it was proper for the Circuit Court to direct the jury to find a verdict for the defendant.

The plaintiff was a laborer or construction hand, under a construction boss or foreman of the defendant. He was injured by the fall of a steel rail, which he and other laborers were trying to load from the ground upon a flat car, and which struck the side of the car and fell back. The negligence alleged was, that the foreman moved out the construction train to which the flat car belonged, in the face of an approaching regular freight train, to avoid which the laborers were hurrying to load the rails; and that he failed to give the customary word of command to lift the rail in concert, but, with the approaching freight train in sight, and with oaths and imprecations, ordered the men to get the rail on in any way they could, and they lifted it without concert; *Held*, that whatever negligence there was, was that of either the plaintiff himself or of his fellow servants who with him had hold of the rail.

THE case is stated in the opinion.

*Mr. E. T. Wells* (with whom was *Mr. Edward L. Johnson* for plaintiff in error) submitted on their brief.

*Mr. John F. Dillon* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

James Coyne brought an action in the Circuit Court of the United States for the District of Colorado, against the Union Pacific Railway Company, to recover damages for a personal injury. After issue joined, the case was tried by a jury. The court instructed the jury to find the issues for the defendant, to which instruction the plaintiff excepted. The jury rendered a verdict for the defendant, and the plaintiff has brought a writ of error.

The bill of exceptions sets forth that the plaintiff gave evidence tending to show the following facts: On and before the 18th of May, 1882, the plaintiff was in the employ of the defendant as a laborer or construction hand, under one McCormick, construction boss or foreman of the defendant. McCormick had authority to control and direct, and compel obedience of, the plaintiff, and also, in his discretion, to discharge the plaintiff or any other servant of the defendant working under his direction and control. While employed by the orders of McCormick, the plaintiff, with the other servants and section men of the defendant, went upon its construction train, which was under the control and direction of McCormick, to a place between two stations on its railroad, known respectively as Byers' and River Bend, about two miles east from Byers' station, and at such place the plaintiff and the other servants were commanded by McCormick to load upon a certain flat car in the construction train about forty steel rails, which were then lying near the track of the railroad. The plaintiff and the other employés of the defendant proceeded to load the rails on the flat car, as directed by McCormick, and under his orders, he directing the labor of the plaintiff and the other servants. Each of the rails was from 24 to 29 feet long, and weighed from 400 to 600 pounds. To lift one of them, the labors of about ten men were required; and the plaintiff and the other servants under the command of McCormick were divided into two gangs, of ten or more men each. In loading the rails, each of the gangs was required and directed by McCormick to act in concert, and to lay hold of and lift the rail, and walk with it to the flat car, and there halt, dress, and, at the word of command given by McCormick, lift the rail, and cast it, with one motion, on the floor of the flat car. By reason of the length and great weight of the rails, it was necessary, in loading them upon flat cars, that, in order to avoid injury to the workmen engaged, care, deliberation and concert of action should be observed, and that some person should give the word of command in each of the several stages of progress in loading them, and particularly at the point when the rail was to be thrown upon the car. Prior to

the injury complained of, McCormick had controlled and directed the men in loading the rails, and the plaintiff supposed that, in loading the last rail, the one which hurt him, the same course would be pursued by McCormick. Neither at such place nor nearer than Byers' station was there any siding or switch. When all but three or four of the rails were loaded upon the flat car, the regular freight train of the defendant appeared rapidly approaching from the east. McCormick thereupon, with violent oaths and imprecations, urged the plaintiff and the other men of the party to make haste and complete the loading of the rails, so that he might move the construction train back to Byers' station and out of the way of the freight train. By reason of the great haste so commanded by McCormick, and the confusion resulting therefrom, the plaintiff, who had before been, and then was, working and lifting at the end of the rail seized by the gang to which he belonged, was crowded off from that rail. McCormick, who was then, as before, standing on the flat car, commanded the plaintiff with oaths and violent language, to lay hold of the other rail and not to stand idle. Thereupon, the plaintiff in obedience to the commands of McCormick, rushed to and seized upon the rail being lifted by the other gang of men and moved forward to the flat car. While the plaintiff and the other men so holding that rail were awaiting the word of command to lift it, McCormick, with further oaths, imprecations, and harsh and violent commands, ordered the party to get the rail on in any way they could, not giving to them any word of command. Thereupon, the party, hurried and agitated by the oaths, imprecations, and violent commands of McCormick, lifted without concert, some at one moment and some at another, and threw the rail at one end with force and at the other end with less force, so that it struck the side of the flat car at one end and fell backwards. The plaintiff, seeing that it was about to fall, endeavored to retreat out of the way of it, but was unable to avoid it, and it fell on him, bore him down, and broke and crushed his foot and leg. He had been in the service of the defendant only about seven days. At the time of his going with McCormick to the place of loading the rails,

the time at which the freight train of the defendant would approach the place was well known to McCormick and was unknown to the plaintiff. The freight train was overdue at Byers' station at the time the construction train left that station, and McCormick knew the fact of its being so overdue, and knew that the freight train was then coming towards Byers' station from the east; and the plaintiff knew nothing about the freight train. The injury so occasioned to the plaintiff, was probably due and owing to the haste and confusion occasioned by the oaths, violent commands and injunctions to make haste given by McCormick.

The only question to be considered in the case is whether it was proper for the court to instruct the jury to find for the defendant, or whether the case should have been left to the jury.

We are of opinion that it was proper to direct a verdict for the defendant. On the facts set forth, the injury to the plaintiff was not caused by any negligence on the part of McCormick. It is alleged that McCormick, knowing of the approach of the regular freight train, moved out his train in the face of it; but that does not show any negligence, for it does not appear that the approaching freight train was so near as to render it unsafe for McCormick to start the construction train. Whatever the distance away of the freight train, it would properly be called an approaching train; and it is very plain that the work of construction and repair must be done in the intervals between the running of regular trains. This latter fact was known as well to the plaintiff as to McCormick, and the plaintiff, being employed to do construction work with a construction train, must be held to have assumed the risk of doing it at the times at which it had to be done. The fact that all of the rails save three or four had been loaded at the time shows that there was no negligence in undertaking to load the rails upon the construction train at the time they were loaded. The negligence on the part of McCormick, if there was any, could have been only as to the manner of loading the particular rail whose fall injured the plaintiff.

It is clearly to be deduced from the evidence that the method

described, of lifting the rail, walking with it to the car, halting, dressing, and then, acting in concert, lifting the rail, at the word of command given by McCormick, and throwing it upon the floor of the flat car, was a proper and safe method of loading the rails, and that if, in the course of such action, the injury to the plaintiff had happened, no negligence could have been complained of. The negligence alleged consists in the fact that, after the men had lifted the rail in question and had carried it forward to the car and were there holding it, awaiting the word of command from McCormick to lift it further and throw it on the car, McCormick failed to give the word of command in such a way as to produce concert of action in the men, but, on the contrary, ordered them to get the rail on the car in any way they could. The fact that McCormick hurried the men does not show any negligence on his part, or excuse any negligence on theirs. The necessity of keeping the construction train out of the way of the freight train was one of the risks of the employment. The use of oaths and imprecations by McCormick was not an element of negligence. The fact that McCormick urged the men to hasten, even if, as a consequence, the plaintiff and his fellow-workmen became confused and failed to act in concert, cannot be regarded as a fault or negligence in McCormick. Whatever negligence there was, was the negligence either of the plaintiff himself or of his fellow-servants who with him had hold of the rail.

These views being conclusive in favor of the defendant, it is unnecessary to consider the broader grounds urged in support of the judgment below.

*Judgment affirmed.*

Mr. Justice Brewer concurs in the judgment.